# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

FILED
U.S. DIS...
EASTERN DISTRI...

OCT 2 ? 2004

'AMES W ...  ...MACK, CLE...

PATRICIA STONE, ADMINISTRATRIX FOR THE ESTATE OF
ALISON STONE, DECEASED                                    **PLAINTIFF**

VS.                        CASE NO. 4-04-CV-1241 JLH

ROBERT L. BARROW, M.D., BRIAN
NICHOL, M.D., BRIAN NICHOL DBA     This case assigned to District Judge _Holmes_
INTERVENTIONAL PAIN CONSULTANTS, P.A.,     and to Magistrate Judge _Jones_
BADIH ADADA, M.D., CHRISTOPHER MOCEK, M.D.
INNOVATIVE SPINE, USA DRUG/BOWMAN CURVE/
SUPER D ACQUISITION CO.,
STEPHEN L. LAFRANCE PHARMACY CO, D/B/A
USA DRUG, LISA BURGESS,
and HARRY GALUSHA                                    **DEFENDANTS**

## COMPLAINT

Plaintiff, for her cause of actions against Defendants, ROBERT L.

BARROW, M.D., BRIAN NICHOL, M.D., BRIAN NICHOL doing business

as INTERVENTIONAL PAIN CONSULTANTS, P.A.,BADIH ADADA, MD.,

CHRISTOPHER MOCEK, M.D., INNOVATIVE SPINE, USA

DRUG/BOWMAN CURVE/SUPER D ACQUISITION CO., STEPHEN L.

LAFRANCE PHARMACY CO. d/b/a USA DRUG, LISA BURGESS, and

HARRY GALUSHA, hereby states the following:

## JURISDICTIONAL STATEMENT

1.  That the Plaintiff, Patricia Stone, is an individual of Pulaski County, Arkansas. The Plaintiff is the duly appointed Administratrix for the Estate of Alison Stone, deceased, having been appointed by the Probate Court of Pulaski County, Arkansas, on May 10, 2004.

2.  That the deceased, Alison Stone, prior to her death, resided at 13025 Lorena Avenue, Little Rock, Pulaski County, Arkansas.

3.  That the Defendant ROBERT L. BARROW, M.D., is a physician with his principle place of business located within Pulaski County, Arkansas.

4.  That the Defendant BRIAN NICHOL, M.D., is a physician operating a business known as INTERVENTIONAL PAIN CONSULTANTS, P.A., with its principle place of business in Pulaski County, Arkansas.

5.  That the Defendant BADIH ADADA, M.D., is a doctor employed by UAMS Medical Center in Little Rock, Arkansas, and is not a citizen of the United States of America.

6.  That the Defendant CHRISTOPHER MOCEK, MD., is a physician employed by INNOVATIVE SPINE in Little Rock, Pulaski County,

Arkansas.

7.   That Defendant INNOVATIVE SPINE has its principal place of business located at 8907 Kanis Road, Suite 200, Little Rock, Pulaski County, Arkansas 72005.

8.   That Defendant USA DRUG/BOWAN CURVE operates under the umbrella of SUPER D ACQUISITION CO.

9.   That Defendant SUPER D ACQUISITION CO. is incorporated in the State of Delaware.

10.  That the Defendant USA DRUG/BOWMAN CURVE/SUPER D ACQUISITION CO maintains a corporate office at the street location of 3017 North Midland Drive, Pine Bluff, Arkansas 71063.

11.  That Defendant USA DRUG operates a store at the street location of 215 W. Bowman Road, Little Rock, Arkansas 72211.

12.  That Defendant STEPHEN L. LAFRANCE PHARMACY INC., d/b/a USA Drug maintains its corporate office at the street location of 3017 North Midland Drive, Pine Bluff, Arkansas 71063, with its registered agent, Corporation Company located at 425 W. Capital, Suite 1700, Little Rock, Arkansas 72201

13. That Defendant LISA BURGESS is a licensed pharmacist employed by USA Drug who filled prescriptions for Alison Stone.

14. That Defendant HARRY GALUSHA is a licensed pharmacist employed by USA Drug who filled prescriptions for Alison Stone.

15. That pursuant to 42 U.S.C.A. § 1320(c)-5, defendants owe a duty to their patients to exercise reasonable care in providing medical care and/or services in a safe and beneficial manner.

16. That the amount in controversy exceeds $75,000.00.

17. That the citizens are of different states and that the requirement for diversity of citizenship is met.

18. That jurisdiction is specifically conferred upon this court pursuant to 28 U.S.C.A. § 1332.. This Honorable Court has jurisdiction over the parties and subject matter to this cause of action.

## FACTUAL ALLEGATIONS

19. On or about October 20, 2001, Alison Stone attended a Renaissance Faire located at the grounds of the Highland Valley United Methodist Church in Little Rock, Arkansas.

20. Alison Stone attended the annual Renaissance Faire and was on a

4

rock climbing wall located at said Faire, which was operated by employees of XTREME ADVENTURE, INC.

21. During the climb, Alison Stone wore a safety harness that included an attached safety line. Employees of X-Treme Adventures failed to properly operate the safety line causing Alison Stone to accelerate toward the ground at a high rate of speed from a distance of forty to fifty feet in the air.

22. Alison Stone collided full force with the ground and immediately complained of severe back pain.

23. Less than one hour after the fall, Alison Stone telephoned her physician, Defendant Robert L. Barrow, M.D., who prescribed pain medication, but the medication failed to ease Ms. Stone's pain. Defendant Dr. Barrow continued to treat Alison Stone from the time of the fall until May of 2003. During this time period, Alison Stone was also treated for depression by Dr. Barrow, who simply prescribed medication for Ms. Stone's depression. Defendant Dr. Barrow did not recommend psychiatric counseling for Alison Stone.

24. On or about May of 2002, Alison Stone went to the UAMS

Emergency Room as she was experiencing excruciating pain and numbness in her right hip and leg.  Ms. Stone was seen by Dr. Barry Brenner.  X-rays  were taken, indicating the following injuries as a result of her fall described above, including but not limited to:  blown discs, ruptured and herniated discs, and herniated discs that were pressing on the spinal cord, causing permanent nerve damage.  Dr. Brenner brought in Defendant Dr. Badih Adada for a consultation, and both doctors recommended that Alison Stone receive a surgery known as a microdiskectomy to remove the damaged disc and decompress the spinal nerve root.   Defendant Dr. Badih Adada is employed at UAMS Medical Center, but does not have citizenship in the United States of America.

25.   On or about June 14, 2002, Defendant Dr. Badih Adada performed microdiskectomy surgery on the L4-L5 herniated discs.

26.   Almost immediately after this surgery, Alison Stone began to experience continued excruciating pain in her lower back.  Alison Stone contacted Defendant Dr. Adada, and Dr. Adada scheduled an MRI for June 24, 2002.

27.   On or about June 27, 2002, a second microdiskectomy surgery had

to be performed by Defendant Dr. Badih Adada to remove a

fragment of the disk that was missed during the initial surgery.  Alison

Stone continued to experience excruciating pain after these two

surgeries.

28.   After the two microdiskectomy surgeries, Alison Stone received

treatment for pain management with Dr. Christopher Mocek, who

diagnosed Ms. Stone with Reflex Sympathetic Dystrophy (RSD).  Dr.

Mocek then began to prescribe additional medication and perform a

series of nerve blocks every week.  The treatment was performed

with an eight inch needle inserted into her spine.  This treatment

provided very limited relief for a period of less than one day.  Even

under local anesthetic, Alison experienced excruciating pain.  On or

about March of 2003, Alison Stone was seen by Dr. Muhammad

Shakir, who first prescribed Methadone for the treatment of Ms.

Stone's pain.

29.   On or about May of 2003, Alison Stone was referred by Defendant

Dr. Robert Barrow to see Defendant Dr. Brian Nichol of Interventional

7

Pain Consultants, who confirmed Ms. Stone's diagnosis of RSD and multilevel disc degeneration.  Upon information and belief, Defendant Dr. Barrow did not provide medical information to Defendant Dr. Nichol concerning Alison Stone's bout with depression.

30.    During the time period from April 2003 until Alison Stone's death in March of 2004, Ms. Stone's prescription for Methadone was simultaneously prescribed with Valium, Hydrocodone and Catapress by Defendant Dr. Brian Nichol.  During this same time period, the dosage of Methadone was dramatically increased by Defendant Dr. Brian Nichol for the extreme pain associated with RSD.  During this same time period,  Ms. Stone's prescription for Methadone alone (180 mg/day) was more than four (4) times the recommended dose and much higher than even the highest manufacturer's recommended dosage.  During this time period, Alison Stone was not receiving any kind of psychiatric counseling.

31.    Alison Stone continued to be in an extreme amount of pain .  On or about March of 2004, Alison Stone took her own life while taking a medley of pain medications, and while in a state of depression

without any kind of psychiatric monitoring.

32.    Alison Stone had her prescriptions filled at USA Drug at its store location of 215 W. Bowman Road, in Little Rock, Arkansas.

33.    Lisa Burgess and Harry Galusha were licensed pharmacist employed by USA Drug located on Bowman Road with whom Alison Stone had constant contact.

34.    The two pharmacist knew of the multiple medications being prescribed to Alison Stone.

35.    The two pharmacist knew of the serious and harmful affects, consequences, potential problems, and/or potential outcomes of taking such high dosages of the medications being prescribed to Alison Stone.

36.    Lisa Burgess and Harry Galusha continued to service (fill) the prescriptions brought to them by Alison Stone.

37.    No plan was developed by Lisa Burgess and Harry Galusha to assist Alison in developing a plan to achieve an outcome that would improve her quality of life and avoid serious and harmful affects, consequences, potential problems, and/or potential outcomes.

38. Neither the pharmacists nor the pharmacy consulted the prescribing physicians to eliminate, reduce or prevent any drug-related or drug-induced problems.

39. No drug therapy program was developed for Alison Stone.

40. The actions of defendants, USA Drug, Lisa Burgess, and Harry Galusha imputed to the other defendants fell below the standard of care required for licensed pharmacies and pharmacists within Little Rock and the State of Arkansas.

41. The negligent actions of defendants, USA Drug, Lisa Burgess, and Harry Galusha combined with the actions of Ms. Stone's physicians, Defendants ROBERT L. BARROW, M.D., BRIAN NICHOL, M.D., and BADIH ADADA, M.D., **and** CHRISTOPHER MOCEK, fell below the standard of care in the community of Little Rock, Arkansas, and Pulaski County, Arkansas.  The acts of all of the Defendants were the proximate cause of the above-described death of Alison Stone.

42. Such negligent actions on behalf of the defendants were below the standards required by and in violation of the Omnibus Budget Reconciliation Act of 1990 and the Pharmacy Act of the State of

Arkansas.

## COUNT ONE:
## NEGLIGENCE AS DEFINED BY THE
## ARKANSAS MEDICAL MALPRACTICE ACT

43.   Plaintiff incorporates and realleges all allegations contained in

paragraphs 1 though 42, as if fully set forth in their entirety herein.

44.   Defendants ROBERT L. BARROW, M.D., BRIAN NICHOL, M.D. and

BADIH ADADA, M.D., and CHRISTOPHER MOCEK, M.D. owed a

non-delegable duty to patients, including Alison Stone, to use

reasonable care in treating patients with the skill and learning

ordinarily possessed and used by physicians in the same or similar

locality.

45.   Defendants failed to meet applicable standards of care and violated

their duties of care to Alison Stone through negligence.  The

negligence of the Defendants includes, but is not limited to, the

following acts and omissions:

(a)   The failure to properly perform microdiskectomy surgery;

(b)   The failure to provide narcotic medication in an amount in

accordance with the drug manufacturer's indications for use;

11

(c)     The failure to provide psychiatric counseling and/or monitoring

of Alison Stone, despite evidence that depression medication

alone was not sufficient;

(d)     The failure to conduct comprehensive and accurate

assessments and/or the failure to diagnose and treat;

(e)     The failure to implement and ensure that an adequate care plan

for Alison Stone was followed, and

(f)     The failure to provide sufficient medical information (i.e., that

Alison Stone was depressed) when referring Alison Stone for

additional treatment by other physicians.

## Count One (a):  The Failure to Properly Perform Microdiskectomy Surgery

46.     A reasonably prudent medical provider, operating under the same or

similar conditions, would have removed all of the herniated discs for

which the microdiskectomy was performed.  Defendant Dr. BADIH

ADADA failed to meet any reasonable standard of care for such a

procedure when he left a portion of one disc in Ms. Stone's back,

causing her continual and excruciating pain and leading to the need

12

for narcotics to ease the constant pain.

47.   Defendant Dr. Badih Adada was negligent in performing a surgery in

a substandard manner, and in causing Alison Stone unwarranted and

unnecessary pain.  The negligent surgery was an intervening,

proximate cause of Alison Stone's constant pain that caused Alison

to have the operation, which was the proximate cause of her death.

### Count One (b): The Failure to Provide Narcotic Medication in Amounts in Accordance with Manufacturer's Indications for Use

48.   A reasonably prudent medical provider, at the minimum, operating

under the same or similar conditions, would have prescribed narcotic

medication in amounts not exceeding manufacturer's indications for

use.  Defendant Dr. BRIAN NICHOL did not meet this standard of

care when he increased medication for Alison Stone until it reached

dangerous levels, causing Ms. Stone further mental and physical

distress.

49.   Dr. Brian Nichol was negligent in over-prescribing pain medication to

Alison Stone, and in contributing to her debilitating physical and

mental state, the result of which ultimately led her to commit suicide.

## Count One (c): The Failure to Provide Psychiatric Counseling and/or Monitoring of Alison Stone

50.   A reasonably prudent medical provider, operating under the same or similar conditions, would have prescribed psychiatric counseling for Alison Stone when depression medication alone had not alleviated her depression after eighteen (18) months.  Defendant Dr. ROBERT L. BARROW allowed Alison Stone to suffer depression for nearly two years by treating her with medication alone and in not recommending psychiatric counseling.

51.   Defendant Dr. Barrow was negligent in allowing Alison Stone's depression to linger unnecessarily, causing her to remain in a depressed mental state.  Dr. Barrow was also negligent in failing to monitor the mental state of Ms. Stone when it was clear that medication had not eliminated her depression.  The depression and the lack of monitoring thereof caused and/or contributed to Ms. Stone committing suicide.

52.   Defendant Dr. Barrow was also negligent in allowing Ms. Stone's depression to linger for more than a year without referring her to a

14

psychiatrist experienced in treating patients for depression.  This

oversight prevented Ms. Stone from receiving the care she needed,

and increased the probability of suicide.

### Count One (d):  The Failure to Conduct Comprehensive and Accurate Assessments/The Failure to Diagnose and Treat

53.   A reasonably prudent medical provider, operating under the same or

similar conditions, would have given Alison Stone a comprehensive

assessment of her illness to determine a spectrum of treatments to

alleviate her pain and suffering.  Defendants Dr. ROBERT L.

BARROW, Dr. MOCEK,  and Dr. BRIAN NICHOL failed to properly

assess correctly the level of mental anguish suffered by Alison Stone

given the extremely high level of pain that she had to endure.

Referral to a psychiatrist for treatment of her depression, which was

related to her pain, would have been a prudent, preventative step

toward assuring holistic care and/or alternative care for Alison

Stone's condition.

54.   Defendants Dr. Barrow, Dr. Mocek, and Dr. Nichol were negligent in

failing to add a psychiatrist to the medical team treating Alison Stone,

15

and in failing to ensure that she received psychiatric counseling. Given psychiatrists' more extensive knowledge of depression compared to a family physician or a pain specialist, a psychiatrist on Ms. Stone's treating team could have also been consulted to prescribe antidepressants that were more suited to the other medications Ms. Stone was receiving.  As a result of Dr. Barrow's, Dr. Mocek's, and Dr. Nichol's gross negligence, Ms. Stone did not receive the appropriate psychiatric treatment she so desperately needed.

55.   Defendant Dr. BADIH ADADA failed to comprehensively diagnose Alison Stone's pain, which arose in part from the ruptured and herniated discs as well as Reflex Sympathetic Disorder.  Upon information and belief, Dr. Adada's incomplete diagnosis led not only to microdiskectomy that was performed inadequately but to surgery without countermeasures to avoid aggravating Ms. Stone's RSD, but attributed to her taking large volumes of opiates.

## Count One (e): The Failure to Implement and Ensure an Adequate Care Plan for Alison Stone

56.    A reasonably prudent medical provider, operating under the same or

similar conditions, would have prepared and followed a detailed plan

of care for Alison Stone, being sure to include treatment for all

symptoms and ensuring that the treatments did not conflict to the

detriment of Ms. Stone's health.  Defendants Dr. ROBERT L.

BARROW and Dr. BRIAN NICHOL did not adhere to this standard of

care, which caused Ms. Stone to needlessly experience excruciating

pain and suffering.

57.    Defendants Dr. Barrow and Dr. Nichol were negligent in failing to

ensure that Ms. Stone received care to fully relieve both her physical

and mental illnesses, which required a comprehensive treatment

plan.  As a result, Ms. Stone was subjected to a mental state that

made her vulnerable to suicide.  The failure of Dr. Barrow and Dr.

Nichol to provide comprehensive treatment was a contributing factor

in the untimeley and wrongful death of Ms. Stone.

**Count One (f): The Failure to Provide Sufficient Medical Information
to All Treating Physicians**

58.    A reasonably prudent medical provider, operating under the same or

similar conditions, would have made sure that all information about Alison Stone's illnesses was shared by all treating physicians. Upon information and belief, Defendant Dr. ROBERT L. BARROW failed to share with Dr. Nichol the full extent of Ms. Stone's nearly two-year bout with depression.

59.   Defendant Dr. Barrow was negligent in failing to ensure that the true state of Alison Stone's mental health was known, contributing to substandard care for his patient.

60.   A reasonably prudent medical provider, operating under the same or similar conditions, would not have failed to provide the care listed in the paragraphs above. Each of the foregoing acts of gross negligence on the part of Defendants was a contributing factor in the injuries suffered by, and the untimely death, of Alison Stone. further injuries, which were foreseeable to the Defendants.

61.   Defendants were negligent and reckless in breaching the duty they owed to Alison Stone under the Medical Malpractice Act as enumerated herein.

62.   As a direct and proximate result of such grossly negligent, willful,

wanton, reckless, malicious, and/or intentional conduct, Plaintiff

asserts a claim for judgment for all compensatory damages and

punitive damages against Defendants, including, but not limited to,

medical expenses, physical pain, suffering, mental anguish, and

wrongful death in an amount to be determined by the jury, and

exceeding that amount required for federal court jurisdiction in

diversity of citizenship cases, plus costs and all other just and

equitable relief to which Plaintiff is entitled by law.

## COUNT TWO: NEGLIGENCE OF DEFENDANTS ROBERT L. BARROW, M.D., BRIAN NICHOL, M.D., CHRISTOPHER MOCEK, M.D., and BADIH ADADA, MD., USA DRUG/BOWMAN CURVE/SUPER D ACQUISITION CO., STEPHEN L. LAFRANCE PHARMACY CO., LISA BURGESS AND HARRY GALUSHA

63.   Plaintiff incorporates and realleges all allegations contained in

paragraphs 1 though 62, as if fully set forth in their entirety herein.

64.   Defendants ROBERT L. BARROW, M.D., BRIAN NICHOL, M.D.

CHRISTOPHER MOCEK, and BADIH ADADA, M.D., USA

DRUG/BOWMAN CURVE/SUPER D ACQUISITION CO,

INNOVATIVE SPINE, STEPHEN L. LAFRANCE PHARMACY CO,

LISA BURGESS AND HARRY GALUSHA owed a non-delegatable

19

duty of care to patients, including Alison Stone, to provide adequate and appropriate custodial/medical care and supervision, which a reasonably careful medical provider would provide under similar circumstances.

65.   Defendants owed a duty to patients, including Alison Stone, to exercise reasonable care in providing care and services in a safe and beneficial manner.  Under 42 U.S.C.A. § 1320c-5, Defendants Barrow, Nichol, Mocek,  and Adada, as physicians and USA Drug/Bowman Curve/Super D Acquisition Co., Lisa Burgess and Harry Galusha, as the pharmacy and pharmacist, were obligated "to assure, to the extent of (their) authority that services ... provided by such practitioner or person to the beneficiaries and recipients (of Medicare) ... 2) will be of a quality which meets professionally recognized standards of health care ... ."

66.   Defendants Robert L. Barrow, M.D., Brian Nichol, M.D. Christopher Mocek, M.D., and  Badih Adada, M.D. and other, as yet to be named, physicians and nurses, USA Drug/Bowman Curve/Super D Acquisition Co., Lisa Burgess and Harry Galusha had a responsibility

20

to acquire and/or employ reasonable training and skill so that they could deliver the appropriate care and services to patients, including Alison Stone, in a safe and beneficial manner.

67.   Said Defendants breached these duties by failing to deliver care and services that a reasonably careful person would have provided under similar circumstances, and by failing to prevent the neglect of Alison Stone's health-care needs.

**68.**   A reasonably careful medical provider, operating under similar circumstances, would foresee that the failure to provide the ordinary care listed above would result in devastating injuries and lead to the death of Alison Stone.

*69.*   Defendants further breached their duty of care to Alison Stone by violating certain laws and regulations in force in the State of Arkansas, and Federal laws under Medicare, at the time of the occurrences discussed herein, knowing that the lives and health of patients such as Alison Stone were at risk whenever Defendants failed to meet such duties as required by law.  Violation of, including, but not limited to, these regulations is evidence of Defendants'

21

negligence.  These laws and regulations include, but are not limited to the following:

    (a)    42 C.F.R. § 482;

    (b)    42 C.F.R. § 483.

70.    As a direct and proximate result of such grossly negligent, willful, wanton, reckless, malicious, and/or intentional conduct, Plaintiff asserts a claim for judgment for all compensatory damages and punitive damages against Defendants including, but not limited to, medical expenses, physical pain, suffering, mental anguish, and wrongful death in an amount to be determined by a jury and exceeding that amount required for federal court jurisdiction in diversity of citizenship cases, plus costs and all other relief to which Plaintiff is entitled by law.

## COUNT THREE: OUTRAGE

71.    Plaintiff incorporates and realleges all allegations contained in paragraphs 1 though 70, as if fully set forth in their entirety herein.

72.    The patient care and treatment provided to Alison Stone by the Defendants ROBERT L. BARROW, M.D., BRIAN NICHOL, M.D.,

CHRISTOPHER MOCEK, M.D., and BADIH ADADA, M.D., was an

outrageous deviation from the acceptable standard of care.

73.   The patient care and treatment provide to Alison Stone in the

negligent disbursement of such large quantities of opiates and other

extremely powerful medications by Defendants USA Drug/Bowman

Curve/Super D Acquisition Co., Lisa Burgess, and Harry Galusha was

an outrageous deviation from the normal acceptable standard of

care.

74.   The willful and wanton conduct of Defendants Barrow, Nichol, Mocek,

Adada, USA Drug, Lisa Burgess and Harry Galusha was extreme and

outrageous as follows:

(a)   As a result of Defendants' failure to provide adequate and

reasonable care, Alison Stone suffered severe pain that was

compounded with improper surgical procedures, an overdose

of narcotic medication and a failure to provide psychiatric

counseling and monitoring;

(b)   As a result of the Defendants' failure to provide proper care

and monitoring for Alison Stone, Ms. Stone suffered a severe

23

depression that was grossly impacted by the medley of

narcotic medication.

(c)  As a result of the Defendants' acts and omissions, Alison

Stone's judgment was so impaired by the excruciating and

unbearable pain that Alison Stone took her own life.

## Count Three (a):  The Failure to Provide Adequate and Reasonable Care

75.  The treatment given Alison Stone was an outrageous deviation from

acceptable standards of care because, instead of helping to improve

her condition with each medical act, instead the Defendants' care

made Alison Stone suffer more.

76.  Defendant Dr. ROBERT BARROW prescribed pain medication for

Alison Stone without treating the underlying causes of her pain.

Alison Stone was forced to seek emergency care at the University of

Arkansas for Medical Sciences.

77.  Defendant Dr. BADIH ADADA sought to treat Alison Stone's

excruciating pain through microdiskectomy in an attempt to address

the pain caused by Alison Stone's ruptured discs, herniated discs,

and nerve damage.  However, Dr. Adada's treatment was

substandard in that he inadequately performed the microdiskectomy,

leaving a part of one disc inside Alison Stone and causing her to

experience yet more excruciating pain.  Dr. Adada also failed to

comprehensively diagnose her problem in that he did not realize she

had RSD.

78.   Defendant Dr. BRIAN NICHOL sought to address Alison Stone's

excruciating pain by prescribing more and more of a narcotic

medication.  However, the levels of medication were so outrageously

high that Alison Stone suffered an impaired mental state.

79.   Defendant Dr. Robert Barrow sought to cure the severe depression

Alison Stone suffered because of her pain by prescribing

medication.  However, after medication alone did not alleviate the

depression, Dr. Barrow failed to prescribe psychiatric counseling or

to monitor her mental state.  Alison Stone continued to suffer a

severe depression without adequate care.

80.   Defendants Dr. Barrow and Dr. Nichol, as a direct result of

inadequate care, outrageously caused more harm to their patient at

every step of their medical care.  Instead of seeking other medical

solutions when their first courses of treatment failed to help Alison

Stone, Drs. Barrow and Nichol continued the said courses of

treatment, leading to continued pain and an impaired mental state for

Ms. Stone.

## Count Three (b):  The Failure to Provide Adequate and Reasonable Care

81.    The treatment Alison Stone received for her mental illness was an

outrageous deviation from acceptable standards of care because

she was allowed to suffer from depression for nearly two years

without benefit of the full range of psychiatric services to which she

would normally have been expected to receive.  She never received

either psychiatric counseling nor psychiatric monitoring despite the

fact that her depression failed to improve with medication alone.

82.    Defendants Dr. ROBERT BARROW and Dr. BRIAN NICHOL

allowed Alison Stone's depression to continue without abatement and

aggravated by an unusually high level of a narcotic for pain.  The

impaired mental fitness Alison Stone suffered as a result of said

physicians' outrageous failure to provide adequate and reasonable care was the proximate cause of Ms. Stone's death.

## Count Three (c): Acts and Omissions

83.   By his actions and omissions, Defendant Dr. ROBERT BARROW failed to provide Alison Stone the proper psychiatric care she needed to cope with her pain and treatment.  In addition to failing to recommend or provide psychiatric counseling and/or monitoring, Defendant Barrow also failed to inform Defendant Dr. Brian Nichol of her mental illness.  As a result, Ms. Stone remained mentally impaired.

84.   Defendant Dr. BRIAN NICHOL failed to exercise prudent judgment in over-prescribing pain medication for Alison Stone, which compounded her state of mental impairment.  He also failed to consider that Ms. Stone might need monitoring on such a high dosage of medication or that psychiatric counseling might help to alleviate her pain.

85.   As a direct and proximate result of such grossly negligent, willful, wanton, reckless, malicious, and/or intentional conduct, Alison Stone

suffered multiple injuries, including the most serious and permanent injury–wrongful death.  Plaintiff asserts a claim for judgment for all compensatory damages and punitive damages against Defendants including, but not limited to, severe emotional distress, in an amount to be determined by a the jury and exceeding that amount required for federal court jurisdiction in diversity of citizenship cases, plus costs and all other relief to which Plaintiff is entitled by law.

## COUNT FOUR: BREACH OF CONTRACT

86.  Plaintiff incorporates and realleges all allegations contained in paragraphs 1 though 85, as if fully set forth in their entirety herein.

87.  Alison Stone entered into an express or implied contract with Defendants Dr. ROBERT BARROW, Dr. BRIAN NICHOL, Dr. CHRISTOPHER MOCEK,  and Dr. BADIH ADADA, whereby for consideration duly paid by her, or on her behalf, Defendants were to provide her with medical care to treat her for injuries sustained as a result of her fall from the rock wall, as well as for her depression.  By terms of such contract, or Admissions Agreement, Defendants expressly or impliedly agreed or warranted to use reasonable care

and diligence in providing medical care and treatment to Alison
Stone, and to exercise reasonable care in maintaining the personal
safety and general health and welfare of Alison Stone.  Pursuant to
such contract, Alison Stone was entrusted to the Defendants' sole
custody and care.

88.   As a proximate consequence of the aforementioned acts, omissions,
failures, and substandard care, Defendants breached the terms of
the foregoing warranty and/or contract, and Alison Stone was caused
to suffer pain and suffering, unnecessary medical treatments, and
death.

89.   As a direct and proximate result of Defendants' breach of contract,
Plaintiff asserts a claim for judgment for all compensatory damages
including the amount a jury determines is sufficient compensation to
provide Plaintiff with the benefit of the bargain promised by
Defendants, plus attorneys' fees, costs, and all other relief to which
Plaintiff is entitled by law.

90.   Plaintiff is entitled to attorneys' fees pursuant to Ark. Code Ann. § 16-
22-308.

## **COUNT FIVE: WRONGFUL DEATH**

91.   Plaintiff incorporates and realleges all allegations contained in paragraphs 1 though 90, as if fully set forth in their entirety herein.

92.   On or about March 24, 2004, at the time of her death, Alison Stone was under, or had been under, the care of the named Defendants Dr. JAMES BARROW, Dr. BRIAN NICHOL, Dr. CHRISTOPHER MOCEK,  and Dr. BADIH ADADA.

93.   At the time of her death, alison Stone's prescriptions for medication was being serviced and/or filled at the pharmacy of USA Drug/Bowman curve/Super D Acquisition Co. by Lisa Burgess and Harray Galusha, pharmacists at said pharmacy.

94.   The negligence of all the Defendants, as previously described in Counts One through Four, was a direct and proximate cause of her death.

95.   Because of the untimely, wrongful death of Alison Stone, Plaintiff asserts a claim for judgment for all compensatory damages including the amount a jury determines is sufficient compensation for loss of life, to provide Plaintiff with the benefit of the bargain promised by

Defendants, plus attorneys' fees, costs, and all other relief to which Plaintiff is entitled by law.

## COUNT SIX: NEGLIGENT DISTRIBUTION OF PRESCRIBED MEDICATION

96.   Plaintiff incorporates and realleges all allegations in paragraphs 1-95, as if fully set forth in their entirety herein.

97.   Defendant USA Drug negligently dispensed, sold, distributed, and/or transferred possession of medications prescribed to Alison Stone.

98.   Defendant Lisa Burgess negligently dispensed, sold, distributed, and/or transferred possession of medications prescribed to Alison Stone.

99.   Defendant Harry Galusha negligently dispensed, sold, distributed, and/or transferred possession of medications prescribed to Alison Stone.

100.   Defendants USA Drug, Lisa Burgess and Harry Galusha knew or should have known that continuing to provide such high dosages of the medications prescribed to Alison Stone would likely result in serious bodily harm and/or death.

101. Defendant Lisa Burgess failed to participate in a "patient care plan" for Alison Stone.

102. Defendant Harry Galusha failed to participate in a "patient care plan" for Alison Stone.

103. Defendant USA Drug failed to provide a reasonable "pharmacy care" program to Alison Stone.

104. Defendant Lisa Burgess failed to consult with the prescribing practitioner to identify, resolve, and prevent potential and actual drug-related problems.

105. Defendant Harry Galusha failed to consult with the prescribing practitioner to identify, resolve, and prevent potential and actual drug-related problems.

106. Defendant USA Drug failed to consult with the prescribing practitioner to identify, resolve, and prevent potential and actual drug-related problems.

107. Defendant Lisa Burgess failed to develop a responsible drug therapy program for Alison Stone.

108. Defendant Harry Galusha failed to develop a responsible drug

32

therapy program for Alison Stone.

109.  Defendant USA Drug failed to develop a responsible drug therapy program for Alison Stone.

110.  Defendant USA Drug is in violation of the Pharmacy Act of the State of Arkansas. ( A.C.A. 17-92-101, *et seq.*).

111.  Defendant USA Drug is in violation of Title IV of the Omnibus Budget Reconciliation Act of 1990.

112.  Defendants Lisa Burgess is in violation of the Pharmacy Act of the State of Arkansas. ( A.C.A. 17-92-101, *et seq.*).

113.  Defendant Harry Galusha is in violation of Pharmacy Act of the State of Arkansas. ( A.C.A. 17-92-101, *et seq.*)

114.  Defendant Lisa Burgess is in violation of Title IV of the Omnibus Budget Reconciliation Act of 1990.

115.  Defendant Harry Galusha is in violation of Title IV of the Omnibus Budget Reconciliation Act of 1990.

116.  Defendant USA Drug's negligent actions were a proximate cause of the untimely and wrongful death of Alison Stone.

117.  Defendant Lisa Burgess' negligent actions were a proximate cause

33

of the untimely and wrongful death of Alison Stone.

118.   Defendant Harry Galusha's negligent actions were a proximate cause

of the untimely and wrongful death of Alison Stone.

119.   A reasonably prudent pharmacy placed in similar circumstances

would have developed a responsible "pharmacy care plan".

120.   A reasonably prudent pharmacist placed in similar circumstances

would have developed a responsible "patient care plan", and a "drug

therapy program", in an effort to avoid, eliminate, reduce, and/or

prevent actual and potential drug-related or drug-induced problems.

## PRAYER FOR RELIEF

121.   Pursuant to the Federal Rules of Civil Procedure, Plaintiff demands

that all issues of fact in this case be tried before a jury.

122.   For damages in an amount adequate to compensate Plaintiff for the

injuries and damage sustained;

123.   For all general and special damages caused by the alleged conduct

of Defendants, including, but not limited to, pain and suffering;

124.   For the costs and fees of litigating this case;

125.   For attorneys' fees for breach of contract as provided by Ark. Code

Ann. § 16-22-308;

126.  For pain, suffering, and mental anguish

127.  For punitive damages sufficient to punish Defendants for egregious

conduct and to deter Defendants and others from repeating such

atrocities;

128.  For loss-of-life damages to which Plaintiff is entitled to recover;

129.  For all other just and equitable relief to which Plaintiff is entitled under

state and federal law.

**WHEREFORE**, Plaintiff requests that this Honorable Court find

Defendants guilty of negligence and wrongful death and to award her

compensation sufficient to reasonably accommodate her for the injuries

which she suffered.

Respectfully submitted,

Lori A. Mosby
Attorney for Plaintiff
THE MOSBY LAW FIRM
P.O. Box 2127
Little Rock, Arkansas 72203-2127
(501) 370-9314

35

# VERIFICATION

I, Patricia Stone, hereby verify that the facts in the above Complaint are true
and correct to the best of my knowledge and understanding.

_Patricia A Stone_

Patricia Stone
13025 Lorena Avenue
Little Rock, Arkansas 72211

**STATE OF ARKANSAS   )**
**) ss**
**COUNTY OF PULASKI   )**

**SUBSCRIBED AND SWORN** before me on this 9th day of October, 2004.

Notary Public

MY COMMISSION EXPIRES

(SEAL)

DEBRA ROARK
MY COMM. EXP.
NOTARY
PUBLIC
MAR. 25, 2006
PULASKI CO., ARKANSAS